STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

EXPERI-METAL INC.,
a Michigan corporation,

    Plaintiff,

vs.

COMERICA, INC., a foreign
corporation,

    Defendant.



04 - 5138 - CZ

---

Richard B. Tomlinson (P27604)
Daniel R. Boynton (P 30359)
Joseph W. Thomas (P33226)
DRIGGERS, SCHULTZ & HERBST, P.C.
Attorneys for Plaintiff
2600 West Big Beaver Road, Suite 550
Troy, MI 48084
Telephone: 248.649.6000
Facsimile: 248.649.6442
rtomlinson@driggersschultz.com

---

## COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court nor has any such action been previously filed and dismissed.

Plaintiff, Experi-Metal Inc. ("EMI"), by its attorneys, Driggers, Schultz & Herbst, P.C., for its Complaint against Defendant Comerica, Inc. ("Comerica") states as follows:

1. Plaintiff EMI is a Michigan corporation with its principal place of business located in Macomb County, Michigan.

2. Comerica is a foreign corporation which at all relevant times has conducted business in Macomb County, Michigan.

3.   The amount in controversy exceeds $25,000 exclusive of interest and costs.

**COMMON ALLEGATIONS**

4.   EMI is a world class supplier of prototypes and low volume metal stampings, trim moldings, specialty items, sub-assemblies and after-market sheet metal.

5.   EMI had banked with Comerica since incorporating in September, 2000.

6.   Starting in approximately 1999, EMI entered into agreements with Comerica with respect to online banking to permit EMI to have access to its bank accounts via the Internet.

7.   From approximately 2000 through May 1, 2008, Comerica used a security process known as "digital certificates" as security for Comerica's online banking system, to prevent unauthorized access to customer accounts

8.   Comerica advised EMI that the digital certificates were used to verify that it was EMI that was accessing the EMI accounts at Comerica through the online banking system.

9.   From 2000 through 2008, Comerica sent emails to EMI requiring EMI to click on a link specified in the email and, once on the linked website, to log in and enter certain information in order to obtain the renewal of its digital certificate.

10.   In 2008, Comerica notified EMI that it was switching its security process to a secure token methodology as security for its online banking system and would no longer be using digital certificates.

11.   At the time Comerica switched EMI over to the secure token methodology Comerica knew or should have known that experts in the industry had already criticized the secure token methodology which uses a 2-factor authentication procedure.

12.   Comerica knew or should have known that the technology of the 2-factor authentication procedure which it instituted in 2008 was known to be lacking in any reasonable fortification against "man in the middle" phishing attacks on customer accounts and was in

2

reality a downgrade as a security measure from the digital certificate technology that was previously used by Comerica.

13. Comerica, despite the widespread information and knowledge, ignored the significant warnings available in the literature and chose to institute the secure token methodology and its 2-factor authentication format as its security for online banking to protect against unauthorized access to customer accounts and common phishing attacks.

14. In the two years prior to January 22, 2009 EMI had only initiated two wire transfers of funds from its accounts.

15. On January 22, 2009, EMI received an email that purported to be from Comerica stating that Comerica needed to carry out scheduled maintenance on its banking software and instructed EMI to log onto a linked website.

16. An EMI employee clicked on the link in the email and entered what appeared to be a Comerica website.

17. The EMI employee proceeded to log in and provide the information requested on the website.

18. Upon information and belief, unknown and unauthorized third parties obtained the information, logged into Comerica's online banking site, and immediately began sending wire transfers out of EMI's bank accounts with Comerica, sending the funds to various foreign and domestic accounts.

19. Between 7:30 a.m. and 10:50 a.m., 47 fraudulent wire transfers were initiated from EMI's bank accounts, transferring EMI's funds to various accounts in Russia, Estonia, Scotland, Finland, China, as well as domestic accounts from which funds were quickly disbursed or withdrawn.

20. In addition to the wire transfers, between 7:39 a.m. and 10:50 a.m., there were 12 transfers of funds between EMI accounts that were fraudulently initiated.

21. Despite all of the wire transfers and these unusual activities in EMI's accounts, Comerica did not contact EMI until 10:50 a.m., when a representative of Comerica finally called EMI and asked whether EMI was aware of any outgoing wire transfers.

22. EMI instructed Comerica's representative that EMI had not made any wire transfers and Comerica was not to honor any requested wire transfers or other transfers until further notice.

23. Comerica failed to abide by EMI's request and from 10:53 a.m. until 2:02 p.m., there were approximately 38 additional fraudulent wire transfers or other transfers initiated from EMI's bank accounts and four additional transfers of funds between accounts that were fraudulently initiated.

24. EMI's accounts were charged approximately $560,000 for the unauthorized wire transfers.

## COUNT I

### VIOLATION OF MCLA 440.4601 *et seq.*

25. Plaintiff incorporates and realleges Paragraphs 1 through 24 as though fully set forth herein.

26. As described above, on January 22, 2009, Comerica received fraudulent wire transfer instructions and transfer of fund instructions from the perpetrators who had infiltrated EMI's bank accounts.

27. These wire transfers and transfers of funds between accounts were not authorized by EMI or its agents.

4

28. The wire transfers were not effective as a payment order of EMI under MCLA 440.4702(2) in that the security procedure used by Comerica was not a commercially reasonable method of providing security against unauthorized payment orders or wire transfers for a number of reasons, including, but not limited to, the following:

   a. The secure token technology security procedure was one that was already known to fail;

   b. The security procedure did not verify the identity of the computer sending the instructions to Comerica;

   c. The security testing procedure was not applied to each wire transfer transaction individually;

   d. Comerica knew EMI had only sent two wire transfers in the two years prior to January 22, 2009 and thus transaction verification with respect to EMI would not have been a burden to EMI or Comerica;

   e. Comerica lowered its standard of security by going from digital certificate SSL technology to secure token technology involving 2-factor authentication;

   f. The technology of 2-factor authentication was publicly known to be lacking in any reasonable fortification against "man in the middle" phishing attacks;

   g. Comerica did not detect and prevent the fraudulent wire transfers even though there were 85 fraudulent wire transfers initiated on January 22, 2009 when:

      (i) EMI had only initiated two wire transfers in the two years prior to January 22, 2009; and

      (ii) The wire transfers were originated from an IP address or addresses that EMI never used;

      (iii) The wire transfers sent funds to numerous individual accounts to which EMI had never before transferred funds;

   h. Comerica failed to act promptly to alert EMI to the unusual wire transfer transactions and other unusual transactions;

    i.    Comerica failed to have fraud monitoring programs in place or preventative security features to perform fraud scoring or fraud screening measurements on transactions to detect unusual activity.

    j.    Comerica failed to offer the 2-factor authentication technology as an addition to the existing digital certificate technology specifically for use with wire transfer transaction authentication;

    k.    Comerica utilized a procedure with EMI from 2000 through 2008 in which Comerica sent emails to EMI instructing EMI to log onto web sites linked from those emails and pursue the process for renewing digital certificates and thereby creating in EMI a reliance on receiving emails concerning security matters which required the customer to click on a link in the email and log in their information to the linked website;

    l.    Comerica failed to apply security testing to each payment order individually.

29.    The wire transfers referenced above were not effective as payment orders of EMI under MCLA 440.4702(2), as Comerica did not accept the payment orders issued on January 22, 2009 in good faith as defined by MCLA 440.4605.

30.    The wire transfers referenced above were not effective as payment orders of EMI under MCLA 440.4702(2) in that Comerica did not act in compliance with the written agreements between Comerica and EMI including, but not limited to, the following:

    a.    Comerica allowed transfers from forced zero balance account of EMI in the total amount of $5,000,000 which was prohibited under the terms of the agreements between Comerica and EMI;

    b.    Comerica also allowed additional wire transfers in the total amount of $1,900,000 while EMI had approximately $554,613 in its bank account at the beginning of the day on January 22, 2009 which was in violation of the agreements between Comerica and EMI;

    c.    Comerica accepted wire transfers in excess of $250,000 without confirming the wire transfer by telephone call from Comerica to appropriate personnel at EMI before they were accepted in violation of Comerica's written agreements with EMI.

31.     The wire transfers referenced above were not effective as payment orders of EMI under MCLA 440.4702(2) as Comerica accepted the payment orders after 10:50 a.m. on January 22, 2009 when EMI explicitly told Comerica that it suspected fraud, and that Comerica should not honor any further requested wire transfers or ACH transfers until further notice.

32.     Comerica's security procedure lacked commercial reasonableness, and Comerica cannot prove that it acted in good faith and in accordance with the parties' written agreements and the instructions from EMI and is therefore liable to EMI for EMI's losses from the phishing attack that occurred on January 22, 2009.

33.     As a result of the phishing attack that occurred on January 22, 2009, EMI's accounts have been improperly charged by Comerica and EMI has been damaged in an amount of approximately $560,000.

WHEREFORE, Plaintiff EMI respectfully requests the Court enter a judgment against Defendant Comerica in the amount of $560,000 plus interest as an element of damages pursuant to MCLA 440.4704, together with costs, statutory interest and attorneys' fees and such other relief as the Court deems appropriate.

Respectfully submitted,

DRIGGERS, SCHULTZ & HERBST, P.C.

By: /s/ Richard B. Tomlinson
Richard B. Tomlinson (P27604)
Daniel R. Boynton (P30359)
Joseph W. Thomas (P33226)
Attorneys for Plaintiff
2600 W. Big Beaver Road, Suite 550
Troy, MI 48084
Telephone: 248.649.6000
Fax: 248.649.6442
rtomlinson@driggersschultz.com

Dated: November 17, 2009

## JURY DEMAND

Plaintiff herein demands trial by jury.

                                                Respectfully submitted,

                                                DRIGGERS, SCHULTZ & HERBST, P.C.

By: _____
        Richard B. Tomlinson (P27604)
        Daniel R. Boynton (P30359)
        Joseph W. Thomas (P33226)
        Attorneys for Plaintiff
        2600 West Big Beaver Road. Suite 550
        Troy, MI 48084
        Telephone: 248.649.6000
        Fax: 248.649.6442
        rtomlinson@driggersschultz.com

Dated: November 17, 2009

| Approved, SCAO | | Original - Court<br>1st copy - Defendant | | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|---|
| STATE OF MICHIGAN<br>16th JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY PROBATE | | **SUMMONS AND COMPLAINT** | | CASE NO.<br>09 - 5138 - CZ |

**Court address**
40 North Main Street, Mount Clemens, MI 48043

**Court telephone no.**
586.469.5351

| Plaintiff's name(s), address(es) and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| Experi-Metal, Inc.<br>6485 Wall Street<br>Sterling Heights, MI 48312<br>586.977.1667 | v | Comerica Incorporated<br>c/o The Corporation Company<br>30600 Telegraph Road<br>Suite 2345<br>Bingham Farms, MI 48025 |
| Plaintiff's attorney, bar no., address, and telephone no.<br>Richard B. Tomlinson (P27604)<br>Driggers, Schultz & Herbst, P.C.<br>2600 West Big Beaver Road, Suite 550<br>Troy, MI 48084   248.649.6000 | | *MILLER* (stamp) |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file an answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>NOV 1 7 2009 | This summons expires<br>-- FEB 1 6 2010 | Court clerk<br>*Carmella Sabaugh* |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Macomb County | Macomb County |
| Place where action arose or business conducted | |
| Macomb County | |

November 17, 2009
Date

Signature of attorney/plaintiff   Richard B. Tomlinson

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

| PROOF OF SERVICE | SUMMONS AND COMPLAINT<br>Case No. |
|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

☐ **OFFICER CERTIFICATE**
I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required)

OR

☐ **AFFIDAVIT OF PROCESS SERVER**
Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required)

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| Comerica, Incorporated | 30600 Telegraph Road, Suite 2345<br>Bingham Farms, MI  48025 | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee<br>$ | Miles traveled | Mileage fee<br>$ | Total fee<br>$ |
|---|---|---|---|

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                           Date
My commission expires: _____ Signature: _____
                         Date                    Deputy court clerk/Notary public
Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                          Attachments
_____ on _____
                                    Day, date, time
                                    on behalf of _____
Signature