# Exhibit 1

Westlaw Delivery Summary Report for BOYNTON,DANIEL R

| | |
|---|---|
| Date/Time of Request: | Tuesday, January 18, 2011 14:21 Central |
| Client Identifier: | 999.001 |
| Database: | MI-CS |
| Citation Text: | Not Reported in N.W.2d |
| Lines: | 243 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.



Not Reported in N.W.2d, 2010 WL 3656031 (Mich.App.)
**(Cite as: 2010 WL 3656031 (Mich.App.))**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

UNPUBLISHED

Court of Appeals of Michigan.
BUCKEYE RETIREMENT CO., L.L.C., LTD., Plaintiff-Appellant,
v.
MANAKEY GROUP, L.L.C., and Brent D. Clark, Defendant-Appellee.

Docket No. 290506.
Sept. 21, 2010.

West KeySummary **Guaranty** 195 ⟦   ⟧5

<u>195</u> Guaranty
    <u>195I</u> Requisites and Validity
        <u>195k5</u> k. Validity of Obligation of Principal. <u>Most Cited Cases</u>
    The holder of a line of credit note failed to establish that it observed reasonable commercial standards of fair dealings in obtaining the note, which was guaranteed by a dissolving corporation. Therefore, the signer of the guaranty on behalf of the dissolving corporation could not be held liable to the holder under the Uniform Commercial Code provision stating that an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith takes the instrument for value. The holder failed to ascertain the validity of the guarantor's corporate existence. The

corporation guaranteed the borrower's loan even though the corporation was in the process of dissolving. Although the holder conducted some due diligence, the holder's representative was not involved in the initial review of the relevant documents before the holder obtained the note. M.C.L.A. §§ 440.1201(43), 440.3103(1)(d), 440.3403(1), 450.1833.

Kent Circuit Court; LC No. 06-007559-CK.

Before: MURPHY, C.J., and SAWYER and MURRAY, JJ.

PER CURIAM.

*1 Plaintiff appeals as of the right the trial court's judgment of no cause of action in favor of defendants. We affirm.

Plaintiff first argues that the trial court improperly applied the definition of "good faith" as provided by Article 3 of the Uniform Commercial Code (UCC). We review de novo questions of statutory interpretation. *City of Taylor v. Detroit Edison Co.*, 475 Mich. 109, 115, 715 N.W.2d 28 (2006). The primary goal of statutory interpretation is to discern and give effect to the intent of the Legislature. *Niles Twp. v. Berrien Co. Bd. of Comm'rs*, 261 Mich.App. 308, 313, 683 N.W.2d 148 (2004).

In this case, plaintiff asserted that defendant Brent Clark was personally liable on the Shoe Fixers' guaranty contained in the relevant loan agreements pursuant to MCL 440.3403. MCL 440.3403(1) provides:

Unless otherwise provided in this article or article 4, an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. An unauthorized signature may be ratified for all purposes of this article.

In this case, Pell, Inc., and the former Old Kent Bank executed a loan agreement, wherein the borrower was identified as Pell, with Shoe Fixers and Paul Pell identified as guarantors. Shoe Fixers "guaranteed payment of all indebtedness due and owing by Borrower to Bank." Shoe Fixers was listed as a guarantor even though it was in the process of dissolving. A bank representative indicated that the bank knew and approved of the pending dissolution. In September 2000, Shoe Fixers was dissolved, and Clark claimed that he informed a bank representative about the dissolution. Pell and the bank executed four subsequent loan agreements, all of which were substantially similar to the initial loan agreement, whereby Shoe Fixers "guaranteed payment of all indebtedness due and owing by Borrower to Bank," and all of which contained the affirmative covenant to maintain Shoe Fixers corporate existence. Clark signed all of the relevant loan agreements on behalf of Shoe Fixers.

When Clark signed the subsequent loan agreements on behalf of Shoe Fixers, his signature was unauthorized, where it was "made without actual, implied or apparent authority." MCL 440.1201(43). Because Shoe Fixers was now dissolved, Clark had no authority to obligate Shoe Fixers as a guarantor to the subsequent loan agreements. As a dissolved entity Shoe Fixers could only act to the extent that it was winding up its affairs, and acting as a guarantor does not constitute winding up affairs. See MCL 450.1833. Clark's unauthorized signature was, therefore, "ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value." MCL 440.3403(1). It is undisputed that plaintiff paid for the line of credit note at issue. However, plaintiff could prevail against Clark only if it acted in "good faith."

*2 The UCC contains a definition of "good faith" in both its general provisions article, as well as in Article 3 regarding

negotiable instruments. MCL 440.1201(19) defines "good faith" as "honesty in fact in the conduct or transaction concerned." MCL 440.3103(1)(d) defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." In this case, the latter definition controls. See *Hoerstman Gen. Contracting v. Hahn, Inc.*, 474 Mich. 66, 76, 711 N.W.2d 340 (2006). Clark's liability in this case thus turns on whether plaintiff acted in "good faith," specifically whether it acted with "honesty in fact and the observance of reasonable commercial standards of fair dealing." MCL 440.3103 (1)(d); MCL 440.3403(1). The UCC and our courts have not defined "honesty in fact" or "the observance of reasonable commercial standards of fair dealing." Black's Law Dictionary and the UCC Comments, however, provide some aid in ascertaining the meanings of these terms.

Black's Law Dictionary (7th ed) defines "good faith" as:

A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or seek unconscionable advantage.

MCL 440.3403, Comment 2 provides that an unauthorized signer's liability is "limited to parties who take or pay the instrument in good faith; [however,] one who knows that the signature is unauthorized cannot recover from the signer on the instrument." MCL 440.3103, Comment 4 provides in relevant part:

The definition [of good faith] requires not only honesty in fact but also "observance of reasonable commercial standards of fair dealing." Although fair dealing is a broad term that must be defined in context, it is clear that it is concerned with the fairness of conduct rather than the care with which an act is performed. Failure to exercise ordinary care in conducting a transaction is an entirely different concept than failure to deal fairly in conducting the transaction. Both fair dealing and ordinary care, which is defined in Section 3-103(a)(7), are to be judged in the light of reasonable commercial standards, but those standards in each case are directed to different aspects of commercial conduct.

There is no indication that plaintiff acted with dishonesty in obtaining the line of credit note. The ultimate question in this case is whether plaintiff observed reasonable commercial standards of fair dealing.

At the outset, we note that the trial court's "good faith" ruling was not based on Article 3's definition of "good faith." Rather, the trial court opined that what "the good faith discussion means in context is whether [plaintiff] knew or should have known, or in the exercise of reasonable discovery could have discerned, that the true state of the facts were that Shoe Fixers, Incorporated, was a long since defunct entity." The trial court relied on a published decision, *Paul v. U.S. Mut. Fin. Corp.*, 150 Mich.App. 773, 787, 389 N.W.2d 487 (1986) ("[A] finding of good faith is precluded by a party's failure to make appropriate inquiries where something appears on the face of the instrument or a fact is communicated such that the party could not honestly purchase without inquiry."), which predated the present version of Article 3. [FN1] Below, the trial court found great significance in the fact that plaintiff appeared not to verify that Shoe Fixers was an existing and valid corporate entity when it obtained the line of credit note and corresponding documents from the bank. The trial court concluded that plaintiff "should have made further inquiries if this was a matter of importance to it." We conclude that even though *Paul* predated the 1993 amendment to Article 3, and it is distinguishable from the instant case on its facts, its holding falls within the realm of observing reasonable commercial standards of fair dealing as required by MCL 440.3103(1)(d).

FN1. Notably, the former version of Article 3 did not contain its own definition of "good faith."

*3 It appears from the record that plaintiff conducted some due diligence before obtaining the line of credit note from the bank. But, plaintiff's representative, John Benetis, provided only vague testimony regarding what he reviewed. Notably, he was not involved in the initial review of the relevant documents before plaintiff obtained the line of credit note from the bank. Without testimony from the person conducting due diligence on behalf of plaintiff, plaintiff cannot establish if it observed reasonable commercial standards of fair dealing in failing to ascertain the validity of Shoe Fixer's corporate existence. Ultimately, the record is silent as to whether plaintiff observed reasonable commercial standards of fair dealing in that regard. Our Supreme Court has previously found that a party demonstrated good faith, where the party provided "such detail" and "clear explanations of its reasoning" in dealing with the other party. _Hoerstman, 474 Mich. at 76, 711 N.W.2d 340_. Plaintiff did not demonstrate good faith. Plaintiff had the burden of proof to establish its unauthorized signature claim, MCL 440.3403, against Clark. See generally _Nat'l Wildlife Federation v. Cleveland Cliffs Iron Co., 471 Mich. 608, 631, 684 N.W.2d 800 (2004)_, overruled in part on other grounds _Lansing Sch Ed Ass'n v. Lansing Bd of Ed,_ --- Mich. ----; --- NW2d ---- (Docket No. 138401, decided July 31, 2010). On this record, we hold that the trial court correctly concluded that plaintiff's unauthorized signature claim failed for lack of proof of the good faith element. While the trial court did not use the relevant statutory definition of "good faith," it nevertheless relied on a proposition that embraces the statutory definition. We affirm the trial court's ruling, where it reached the right result for the wrong reason. _Gleason v. Dep't of Transp., 256 Mich.App. 1, 3, 662 N.W.2d 822 (2003)_.

Next, plaintiff complains that the trial court materially misstated the testimony of several witnesses. We review a trial court's factual findings at a bench trial for clear error, but its legal conclusions are reviewed de novo. _Villadsen v. Mason Co. Rd. Comm., 268 Mich.App. 287, 291-292, 706 N.W.2d 897 (2005)_.

Ultimately, plaintiff objects to the following finding by the trial court:

My conclusion from this is that the claim under the statute [unauthorized signature claim under MCL 440.3403] fails for the absence of adequate proof that [plaintiff] Buckeye acquired the paper from Old Kent for value in good faith. It seems to me Buckeye had enough information here that it was on notice of the actual circumstances and could or should have made further inquiries if this was a matter of importance to it.

However, plaintiff chiefly asserts on appeal that the trial court made erroneous findings regarding the Pell-Shoe Fixer merger.

The trial court's oral ruling does not reference the so-called merger. The trial court found that Shoe Fixers dissolved, and that it was essentially irrelevant to the transactions between the bank and Pell. In making this finding, the trial court relied on the testimony of Clark and Chris Cassleman, Pell's contact at the bank. Clark testified that he informed the bank that the ownership of the companies would be simplified, and that the bank seemed positive about the prospective merger. Cassleman indicated that he knew about the Pell-Shoe Fixers merger, that it was a "good thing," and the bank had no objection. Notably, Cassleman testified that Shoe Fixers' dissolution had no consequence for the bank, and the bank was not relying on the Shoe Fixers' guaranty. Logan and Cassleman also testified that the bank typically would not release guarantors on these types of loan agreements. The record supports the challenged finding, and it ultimately came down to a credibility determination for the trial court. See MCR 2.613(C).

*4 Significantly, plaintiff does not squarely state upon which claims it would have prevailed but for the alleged erroneous finding, other than a vague reference to its unauthorized signature claim under MCL 440.3403. And, even if plaintiff's

assertions were true, it still failed to establish the "good faith" element of MCL 440.3403. Plaintiff is not entitled to relief regarding this allegation of error, where we are not left with a definite and firm conviction that a mistake resulted. *Peters v. Gunnell, Inc.,* 253 Mich.App. 211, 221, 655 N.W.2d 582 (2002).

Finally, plaintiff claims that it is entitled to relief, because Clark signed the loan agreements in his individual capacity, and it would also be inequitable to relieve Clark of liability based on his "uncontested dishonesty." Plaintiff abandoned these claims of error, where it provided only self-serving assertions and no authority to support those assertions. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims; nor may he give issues cursory treatment with little or no citation of supporting authority. *Peterson Novelties, Inc. v. City of Berkley,* 259 Mich.App. 1, 14, 672 N.W.2d 351 (2003). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue on appeal. *Yee v. Shiawassee Co. Bd. of Comm'rs,* 251 Mich.App. 379, 406, 651 N.W.2d 756 (2002). We also note that plaintiff's latter claim of error was not included in its statement of questions presented, and plaintiff did not raise this argument before the trial court, nor was it addressed or decided by the trial court; thus it is not properly presented or preserved for appellate review. MCR 7.212(C)(5); *Ammex, Inc. v. Dep't of Treasury,* 273 Mich.App. 623, 646, 732 N.W.2d 116 (2007); *Polkton Charter Twp. v. Pellegrom,* 265 Mich.App. 88, 95, 693 N.W.2d 170 (2005).

Affirmed.

Mich.App.,2010.
Buckeye Retirement Co., L.L.C., Ltd. v. Manakey Group, L.L.C.
Not Reported in N.W.2d, 2010 WL 3656031 (Mich.App.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.